UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                              )
MICHAEL CHAGNON,              )
                              )       CIVIL ACTION
             Plaintiff,       )       No. 24-11638-WGY
                              )
       v.                     )
                              )
TRUEFORT, INC.,               )
SAMEER MALHOTRA, and          )
SCOTT SCHNEIDER,              )
                              )
             Defendants.      )
_____)
```

YOUNG, D.J.                              March 25, 2025

## MEMORANDUM AND ORDER

Before the Court is the Defendants Truefort,

Inc.("Truefort"), Sameer Malhotra ("Malhotra"), and Scott

Schneider's ("Schneider") (collectively, "the Defendants")

motion to dismiss.  Defs.' Mot. Dismiss ("the Motion"), ECF No.

21.  For the reasons stated below, the Motion is ALLOWED in part

as to Counts I, III, V, VI, VII, and VIII, each of which are

dismissed as set forth below, and DENIED in part as to Counts

II, III, and IV, as set forth below.  The Motion is also ALLOWED

on Counts III and IV as to Malhotra and Schneider, and ALLOWED

on Count II as to Schneider.

## I.    INTRODUCTION AND PROCEDURAL HISTORY

The Plaintiff Michael Chagnon ("Chagnon"), a former

Regional Sales Manager of Truefort, claims that the Defendants

failed to pay a $155,000 sales commission and terminated him after he complained about the non-payment.  Compl. ¶¶ 1, 33, 68-71, ECF No. 1-1; Defs.' Mem. Law Supp. Defs.' Mot. Dismiss ("Defs.' Mem.") 1, ECF No. 22.

The Defendants filed a Notice of Removal to this Court on June 19, 2024.  Notice of Removal, ECF No. 1-2.

On August 16, 2024, the Defendants moved to dismiss the complaint for failure to state a claim upon which relief can be granted.  Defs.' Mot. Dismiss; Defs.' Mem.  Chagnon filed an opposition.  Pl.'s Resp. Opp'n Defs.' Mot. Dismiss ("Pl.'s Mem."), ECF No. 29.  The Defendants filed a reply brief.  Defs.' Reply Supp. Mot. Dismiss ("Reply"), ECF No. 32.

## II.  FACTUAL BACKGROUND

Chagnon is an individual residing in Massachusetts.  Compl. ¶ 2.  TrueFort is a company with a principal business office located in New Jersey; however, the company also conducts business and maintains employees in Massachusetts.  Id. ¶ 3.  Malhotra is Truefort's Chief Executive Officer, and Schneider is Truefort's Chief Revenue Officer.  Id. at ¶¶ 4-5.  Chagnon was an employee of Truefort, working as a Regional Sales Manager at Truefort.  Id. ¶ 17.

On October 22, 2021, Chagnon began interviewing with Truefort, including five separate interviews with Truefort's then-Chief Revenue Officer, Vice President of Sales, Enterprise

Sales Representative, Director of Solutions Engineering, and Malhotra.  Id. ¶¶ 14-15.

Although not set forth explicitly in the Complaint, it is undisputed that on November 16, 2021, Chagnon was offered the job, effective December 6, 2021.  See At-Will Employment Agreement ("Employment Agreement"), Defs.' Mem., Ex. A, ECF No. 22-1.  Chagnon signed the Employment Agreement that same day. Id. 2.

The Employment Agreement contained the following terms, among others:

- You will be paid an annual base salary of S155,000.00 (U.S Dollar One Hundred Fifty-five Thousand /year) less regular payroll deductions payable as semi-monthly, which covers all hours worked. Generally, your salary will be reviewed annually but the Company reserves the right to change your compensation on reasonable notice.

- In addition, you will be eligible to receive targeted annual commission of S155,000.00 (U.S Dollar One Hundred Fifty-five Thousand), upon achieving, as determined by the Company, revenue goals and objectives as set by the Company in its sole discretion, and subject to the terms and conditions of a commission plan with the Company.

Id.

On December 6, 2021, Chagnon began his employment with Truefort as a Regional Sales Manager.  Id. ¶ 17.  Within a few months, Chagnon was reassigned to the New England region.  Id. Bill Brodauf ("Brodauf") was Chagnon's supervisor throughout his tenure at Truefort.  Id.

From June through December 2022, Chagnon worked to secure a lucrative deal for Truefort with General Electric ("GE").  Id.

¶¶ 20-23.  Chagnon, who had a $1,000,000 sales quota in 2022, won the business, securing a $4,000,000 deal which, he claims, ought have earned him a commission of approximately $655,000, as there was no cap on potential commissions.  Id. ¶¶ 24-26.

Additionally, after Chagnon started working on the GE deal, his supervisor Brodauf instructed him not to focus on any other deals.  Id. ¶ 29.  Chagnon alleges that he was prompted by this order to ignore all other customers, which cost him commissions and the possibility to build a new pipeline for future customers.  Id. ¶¶ 29-30.

Chagnon received a commission summary that stated his commission as $500,000, although he was expecting $655,000 on the GE deal he had obtained.  Id. ¶¶ 32-34.  Consequently, Chagnon alleges that an additional commission of $155,000 ought be paid to him.  Id.  Chagnon wrote an email to Truefort regarding this shortfall and received a reply from Truefort stating that Chief Financial Officer Eileen Spellman would be informed of the discrepancy in the amount.  Id. ¶ 34.

On January 3, 2023, Chagnon was contacted by Brodauf and notified that his GE deal commission was capped at $500,000. Id. ¶ 35.  Although not attached to the Complaint, the Defendants submitted a compensation plan signed by Chagnon on March 8, 2022, which states that "commissions will be capped at $250,000 payout for individual deals, subject to management

discretion." Defs.' Mem., Ex. B, Truefort Inc. 2023 Variable
Compensation Plan ("Compensation Plan") 2, ECF No. 22-2.

At a meeting on January 9, 2023, Malhotra informed Chagnon
that the Board had designed and approved the above-mentioned
Compensation Plan for 2023, and further stated that the Company
had to pay five additional Solution Consultants a bonus from
Chagnon's commission ($17,000 each). Id. ¶ 50. Malhotra also
stated that Chagnon would start the next year ahead of other
sale representatives in the Company with $72,000 from the GE
renewal. Id. ¶ 51.

In February 2023, Schneider assumed his position as
Truefort's new Chief Revenue Officer. Id. ¶ 57. In their
second meeting, Schneider stated that he agreed with Malhotra,
and that Chagnon should have negotiated the cap on commission
upon his hire. Id. ¶ 60.

In early March 2023, Chagnon was awarded the "#1 Sales
Representative award for Enterprise Sales" at a conference
organized by Truefort in Houston. Id. ¶¶ 36-39. In connection
with receiving this award, Chagnon told Brodauf that he
appreciated the gesture but was disappointed by the commission
reduction and hoped to resolve it. Id. ¶¶ 37-38.

On March 29, 2023, Truefort terminated Chagnon's
employment. Id. ¶ 63. Chagnon was told that "the company was

restructuring," but other employees with less sales success remained at Truefort.  Id. ¶¶ 64-65.

## III. ANALYSIS

Chagnon argues that the Defendants engaged in unlawful employment practices by refusing payment of $155,000 as on earned commission, and by terminating Chagnon for requesting the payment.  See generally Compl.  Chagnon brings eight counts in his complaint against the Defendants: (1) unpaid commissions in violation of the Massachusetts Wage Act, Mass. Gen. Laws. ch. 149, §§ 148, 150 ("the Wage Act"); (2) retaliation in violation of the Wage Act, Mass. Gen. Laws. ch. 149 & 151; (3) breach of contract; (4) breach of the implied covenant of good faith and fair dealing; (5) fraud, misrepresentation, and deceit; (6) estoppel; (7) quantum meruit; and (8) unjust enrichment.  See Compl. ¶¶ 83-130.  Chagnon seeks declaratory, compensatory and injunctive relief.  Id. 18.

For the reasons set out below, this Court grants the Defendants' motion to dismiss as to most of the claims, save for the claims for Wage Act Retaliation (Count II), and the Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing (Counts III and IV) claims, only to the extent that they rely on the Wage Act Retaliation Claim.  The motion is also granted on Counts III and IV as to Malhotra and Schneider, and Count II as to Schneider.

### A.    Standard of Review

#### 1.    Pleading Standard Under Rule 12(b)(6)

To withstand a motion to dismiss, a complaint must "state a claim upon which relief can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).  The complaint must include sufficient factual allegations that, accepted as true, "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Courts "draw every reasonable inference" in favor of the plaintiff, Berezin v. Regency Sav. Bank, 234 F.3d 68, 70 (1st Cir. 2000), but must disregard statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action," Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (cleaned up). "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." Id. at 13.

#### 2.    Heightened Pleading Standard under Rule 9(b)

Actions alleging fraud or mistake are subject to a heightened pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure, which requires that a plaintiff "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  The complaint must specify "the time, place, and content of an alleged false representation" to survive a motion to dismiss. Doyle v.

Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996) (quoting McGinty
v. Beranger Volkswagen, Inc., 633 F.2d 226, 228 (1st Cir.
1980)).  Conclusory allegations are not sufficiently
particularized.  Id. at 193.  "Malice, intent, knowledge, and
other conditions of a person's mind may [, however,] be alleged
generally."  Fed. R. Civ. P. 9(b).

### B.  Consideration of the "Employment Agreement" and "Compensation Plan" Documents at the Motion to Dismiss Stage

Chagnon did not attach the Employment Agreement and the
Compensation Plan to his complaint.  See generally Compl.
Chagnon did, however, refer to these documents in the complaint,
and the Defendants attached the documents as exhibits to their
memorandum in support of this motion to dismiss.  Compl. ¶¶ 18,
97; Employment Agreement; Compensation Plan.

Ordinarily, courts consider only the "facts alleged in the
complaint, and exhibits attached thereto."  Freeman v. Town of
Hudson, 714 F.3d 29, 35 (1st Cir. 2013).  "[A] motion to dismiss
under Rule 12(b)(6) generally provides no occasion upon which to
consider documents other than the complaint."  Doe v. Pawtucket
Sch. Dep't, 969 F.3d 1, 8 (1st Cir. 2020).

There are, however, exceptions where the Court may choose
to consider extrinsic documents, such as "documents the
authenticity of which are not disputed by the parties; . . .
official public records; . . . documents central to the

plaintiff's claim; [and] . . . documents sufficiently referred to in the complaint." Freeman, 714 F.3d at 36 (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). Particularly when "a complaint's factual allegations are expressly linked to -- and admittedly dependent upon -- a document (the authenticity of which is not challenged), that document effectively merges into the pleadings," thereby giving the Court the discretion to consider such additional material. Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008).

Chagnon appears to agree that the Court has the discretion to consider both documents, without converting the Motion into a motion for summary judgement, and it does so here. Pl.'s Mem. 12; see Trans-Spec Truck Serv., 524 F.3d at 321. The complaint implicitly refers to the Employment Agreement and Compensation Plan between the parties, both by Chagnon's reference to his employment at Truefort and by the claims that depend on the existence of a contract between Chagnon and Truefort. The authenticity of the Employment Agreement and Compensation Plan is undisputed, and Chagnon has neither objected nor moved to strike them from the record, thereby waiving objection to their consideration in any event. See Ironshore Specialty Ins. Co. v. United States, 871 F.3d 131, 135 (1st Cir. 2017) (authenticity objection waived). Chagnon's allegations are "expressly linked to -- and admittedly dependent upon" the Employment Agreement

and Compensation Plan. Trans-Spec Truck Serv., 524 F.3d at 321; see Compl. ¶¶ 18-45, 85, 90-92, 94, 97, 98, 104, 109, 116.

Thus, the Court rules that the Compensation Plan and the Employment Agreement "effectively merge[] into the pleadings and the [Court] can review [them] in deciding" the Motion. Massachusetts Laborers' Health & Welfare Fund v. Blue Cross Blue Shield of Mass., 66 F.4th 307, 311 n.3 (1st Cir. 2023) (quoting Beddall v. State Street Bank & Tr. Co., 137 F.3d 12, 17 (1st Cir. 1998)).

### C.  Wage Act Unpaid Commission Claim (Count I)

Under Massachusetts law, the failure to pay the full amount earned by an employee of a commission that is "definitely determined" and that has become "due and payable" is considered a violation of the Wage Act. Parker v. EnerNOC, Inc., 484 Mass. 128, 133 (2020) (quoting Mass. Gen. Laws. ch. 149, § 148); see Mass. Gen. Laws. ch. 149, §§ 148, 148A, 150.[1] If the commission

---

[1] Mass. Gen. Laws. ch. 149, § 148 provides, in pertinent part: "Every person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him to within six days of the termination of the pay period during which the wages were earned if employed for five or six days in a calendar week. . . . [B]ut any employee leaving his employment shall be paid in full on the following regular pay day, and, in the absence of a regular pay day, on the following Saturday; and any employee discharged from such employment shall be paid in full on the day of his discharge . . . . This section shall apply, so far as apt, to the payment of commissions when the amount of such commissions, less allowable

is of a discretionary nature, however, the decision by the employer not to pay is not a violation of the Wage Act.  See Weiss v. DHL Exp., Inc., 718 F.3d 39, 46 (1st Cir. 2013) (holding that, when a bonus plan designates the employer as the sole arbiter of eligibility for the bonus, the employee is not deemed deprived of wages under the Massachusetts Wage Act, and affirming summary judgment for the employer).

Under Massachusetts law, in order for a commission to be considered a "wage" and covered by the Wage Act, it needs to meet two requirements: 1) the amount of the commission needs to be "definitely determined"; and 2) the commission has to become "due and payable."  Mass. Gen. Laws. ch. 149, § 148.  For a commission to qualify as "definitely determined," it must be "arithmetically determinable."  Ellicott v. American Cap. Energy, Inc., 906 F.3d 164, 169 (1st Cir. 2018).  Where an employer retains the discretion whether to pay the commission, such discretion prevents the commission from being "definitely determined" as required for Wage Act protection.  McAleer v. Prudential Ins. Co. of Am., 928 F. Supp. 2d 280, 288 (D. Mass. 2013) (Woodlock, J.) ("Discretion prevents commissions from

---

or authorized deductions, has been definitely determined and has become due and payable to such employee, and commissions so determined and due such employees shall be subject to the provisions of section one hundred and fifty . . . ."  Id.

being definitely determined if the employer is under no
obligation to award them.").

In the present case, the "definitely determined" criterion
is not met, because the Employment Agreement contains a
provision which stipulates that the targeted annual commission
will be determined at the Company's **sole** discretion:

> In addition, you will be eligible to receive targeted
> annual commission of $155,000, upon achieving, as
> determined by the Company, revenue goals and objectives
> as set by the Company **in its sole discretion**, and subject
> to the terms and conditions of a commission plan with
> the Company.

Employment Agreement 2 (emphasis added). The Defendants contend
that, in accordance with the Employment Agreement, they have
full management discretion on the payment of the commission.
Defs.' Mem. 8-9. Furthermore, they argue that since the
employee's commission is fully discretionary, it does not
constitute wages under the Wage Act. Id.; see also Reply 4.

Similarly, under the Compensation Plan, while commissions
are "capped at $250,000 payout for individual deals," such
commissions are nevertheless "subject to management discretion."
Compensation Plan. 2 n.1. As argued by the Defendants, in the
present case Chagnon has already received a commission in the
amount of $500,000 in relation to his closing the GE deal. Id.;
Defs.' Mem. 10; Reply 3. Nevertheless, Chagnon still seeks an

additional payment in the amount of $155,000, which, according to the Defendants, has no basis in law or fact.  Id.

This Court rules that Chagnon's commission does not constitute "wages" under the Wage Act, because the Employment Agreement signed by both parties contains an express provision which stipulates that the decision on payment is left solely to "the employer's discretion."  Employment Agreement.  Chagnon has failed to state a claim upon which relief can be granted, and therefore, this Court grants the motion to dismiss on count one for the unpaid commission claim under the Wage Act.

### D.  Wage Act Retaliation Claim (Count II)

The Defendants contend that Chagnon's retaliation claim fails because it is dependent upon his failed claim as to the unpaid commission under the Wage Act.  Defs.' Mem. 11.  The Defendants argue that these two claims are interconnected, and since Chagnon does not have any rightful claim for a commission payment under the Wage Act, he has no right to seek a retaliation remedy under such Act.  Id.  The Defendants' contention as to the retaliation claim fails.

Under the Wage Act, "[n]o employee shall be penalized by an employer in any way as a result of any action on the part of an employee to seek his or her rights under the wages and hours provisions of the Massachusetts Wage Act."  Mass. Gen. Laws. ch.

149, § 148A; <u>Parker</u>, 484 Mass. at 129.[2]  "[T]o ensure that the requirements of the Wage Act are met, the statute prohibits employers from retaliating against employees who **assert** their rights."  <u>Parker</u>, 484 Mass. at 133 (emphasis added).

For a retaliation claim to survive a motion to dismiss, "although a plaintiff must plead enough facts to make entitlement to relief plausible in light of the evidentiary standard that will pertain at trial . . . she need not plead facts sufficient to establish a prima facie case."  <u>Figueroa</u> v. <u>Cactus Mexican Grill LLC</u>, 575 F. Supp. 3d 208, 216, 217 (D. Mass. 2021) (Saylor, C.J.).

Employees' retaliation claims are assessed separately from their claims regarding unpaid commissions.  <u>See</u> <u>Fraelick</u> v. <u>PerkettPR, Inc.</u>, 83 Mass. App. Ct. 698, 706 (2013) ("In order to maintain an actionable claim under § 148A, a plaintiff is not obliged to successfully prove her right to seek recovery of the untimely paid 'wages' in question.  It is enough that a

---

[2]  Mass. Gen. Laws. ch. 149, § 148A states that "any employer who discharges or in any other manner discriminates against any employee because such employee has made a complaint to the attorney general or any other person, or assists the attorney general in any investigation under this chapter, or has instituted, or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceedings, shall have violated this section and shall be punished or shall be subject to a civil citation or order as provided in section 27C."

plaintiff . . . reasonably believed the remuneration in question fell within the scope of the Wage Act.").  In other words, Chagnon may plead his retaliation claim without successfully pleading his underlying Wage Act claim.

Here, Chagnon has pleaded plausibly that he was terminated by Truefort because he complained about the non-payment of his commission to Truefort representatives.  Id. ¶¶ 34, 45, 46, 58, 63-75; Pl.'s Mem. 15.

At the motion to dismiss stage, that a termination occurred "shortly" after an assertion of rights is sufficient to infer retaliatory action by the employer.  Levesque v. Schroder Inv. Mgmt. N. Am., Inc., 368 F. Supp. 3d 302, 314-15 (D. Mass. 2019) (Gorton, J.); see also Dorney v. Pindrop Security, Inc., No. 15-cv-11505, 2015 WL 5680333, at *5 (D. Mass. Sept. 25, 2015) (Burroughs, J.).  Here, Chagnon was terminated by Truefort on March 29, 2023, approximately a month and a half after he contacted Truefort executives and expressly complained of non-payment, and a few weeks after he complained to his supervisor after receiving his sales award.  Compl. ¶¶ 36-38, 42-75.  Thus, on this record and drawing all inferences in favor of the nonmoving party, this Court rules that Chagnon has a plausible retaliation claim with respect to his termination, which occurred shortly after he complained repeatedly to the

Defendants and to his supervisor about a wage to which he believed he was legally entitled.  Id.; Pl.'s Mem. 14-15.

### E.    Breach of Contract Claim (Count III)

Under Massachusetts law, to succeed on a breach of contract claim a plaintiff must show that "1) a valid contract between the parties existed, 2) the plaintiff was ready, willing, and able to perform, 3) the defendant was in breach of the contract, and 4) the plaintiff sustained damages as a result." Bose Corp. v. Ejaz, 732 F.3d 17, 21 (1st Cir. 2013). "Interpretation of an unambiguous contract is a matter of law and may, therefore, be done at the motion to dismiss stage."  Id.

Chagnon alleges that the Defendants breached their contractual duty for the payment of the commissions; however, other than restating the elements of a breach of contract claim, he has not substantively opposed the motion here.  Compl. ¶¶ 96-102; Pl.'s Mem. 16.  Nevertheless, the unambiguous Employment Agreement and the discretion vested in the employer as to the payment of the commissions at issue prevents a breach of contract claim on the grounds alleged by Chagnon, because he has not alleged that the Defendants acted in any way inconsistent with the contractual terms.  Indeed, the complaint alleges that Chagnon was seeking additional, but discretionary, commissions.

Accordingly, the motion to dismiss as to Chagnon's breach of contract claim is allowed, except as to the implied covenant

claim, _infra_.  See Mill-Bern Assocs., Inc. v. Dallas Semiconductor Corp., No. 98-1435, 2002 WL 1340853, at *9 (Mass. Super. Ct. June 13, 2002) (Fabricant, J.) ("[A] claim for breach of the implied covenant [of good faith and fair dealing] is, in substance, a claim of breach of contract, albeit breach not of any express covenant . . . .").

**F.  Breach of Implied Covenant of Good Faith and Fair Dealing Claim (Count IV)**

Under Massachusetts law, "[t]he covenant of good faith and fair dealing, implied in every contract, requires that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'"  Griffin v. Mears, 105 Mass. App. Ct. 1117 (2025) (quoting Druker v. Roland Wm. Jutras Assocs., 370 Mass. 383, 385 (1976)).  As the implied covenant cannot create or impose rights that are not determined in the operative contract by the parties, Chagnon's argument as to an "implied" duty of the employer to pay an additional $155,000 fails to constitute a sufficiently plausible claim.  See Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 385 (2005); Uno Restaurants, Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 388 (2005); King v. Driscoll, 424 Mass. 1, 7 (1996).  The contract between the parties expressly contemplates that the employer has unilateral discretion regarding the payment of the additional commission. Employment Agreement; see Klauber, 80 F. 4th at 5-6;

[17]

Comley v. Media Planning Grp., 108 F. Supp. 3d 6, 8 (D. Mass. 2015) (Stearns, J.).

In his opposition to this motion, Chagnon suggests that the Defendants may have breached the implied covenant not only by withholding due commission but also by firing him in retaliation for Chagnon's assertion of his rights under the Wage Act. Pl.'s Mem. 17. Chagnon refers to a line of cases beginning with Fortune v. National Cash Reg. Co., 373 Mass. 96 (1977), which developed an exception to at-will employment principles where employees are terminated "in bad faith," Ayash, 443 Mass. at 385, or at least "without good cause," Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 672 (1981) (upholding jury verdict on implied covenant-based breach of contract claim where the plaintiff "lost reasonably ascertainable future compensation based on his past services," namely, "some renewal commissions"); see also Daniels v. Alvaria, Inc., No. 23-cv-10419, 2024 WL 758172, at *7 (Feb. 24, 2024) (Casper, J.) (suggesting that an implied covenant claim might go forward based on an inference that the defendants "retaliated against [the plaintiff] for seeking to enforce her rights under the Wage Act," but cautioning that this line of cases has not been extended to "situations where the future compensation or commission sought is contingent on challenging milestones or tied to services which would have been rendered post

termination"). Although the somewhat novel legal argument on this count is underdeveloped and the complaint does not clearly tie the claim to the alleged facts, Chagnon has pleaded a plausible claim to relief on the basis of this line of case law, because he may be due renewal commissions based on his prior work if he was terminated in bad faith or without good cause -- that is, as alleged, based on a retaliatory motive for his assertion of rights, in violation of public policy. But see Gordon v. Connected Living, No. CV201600060, 2018 WL 3827094, at *4 (Mass. Super. Ct. June 28, 2018) (Miller, J.) (suggesting that an implied covenant claim might be preempted where it overlaps with the Wage Act).

Thus, for substantially the same reasons that it denies Truefort's motion to dismiss on Chagnon's retaliation claim, the Court also denies the motion to dismiss as to Chagnon's breach of the implied covenant of good faith and fair dealing claim.

### G. Fraud / Misrepresentation / Deceit Claim (Count V)

Chagnon further alleges three separate claims together in one count -- fraud, misrepresentation, and deceit. Compl. ¶¶ 108-113. Chagnon asserts that the Defendants falsely "represented to [Chagnon] that he would be paid commissions" and "stated they would work with [Chagnon] to make him whole," with intent to deceive, for the purpose of inducing Chagnon to work for the Defendants. Id.

[19]

In general, "great specificity is ordinarily not required
to survive a Rule 12(b)(6) motion." Alternative Sys. Concepts,
Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004) (quoting
Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, 958 F.2d 15, 17
(1st Cir. 1992)).  The Federal Rules of Civil Procedure,
however, provide an explicit exception to this rule for claims
of fraud.  Fed. R. Civ. P. 9(b).  "In alleging fraud . . . a
party must state with particularity the circumstances
constituting fraud or mistake."  Id.

Rule 9(b)'s heightened pleading requirements apply not only
to claims of fraud, but also to "associated claims where the
core allegations effectively charge fraud." North Am. Catholic
Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 15 (1st
Cir. 2009); Katz v. Belveron Real Estate Partners, LLC, 28 F.4th
300, 308 (1st Cir. 2022).

Thus, when alleging fraud and associated claims, parties
must "specify the statements that the plaintiff contends were
fraudulent, explain why they were fraudulent, and otherwise
identify 'the who, what, where, and when of the allegedly
[misleading] representation' with particularity." SRH Holdings,
LLC v. Government Employees Ins. Co., No. 23-cv-10325-DJC, 2023
2023 WL 4706176, at *7 (D. Mass. July 24, 2023) (Casper, J.)
(citations omitted); see also Mulder v. Kohl's Dep't Stores,
Inc., 865 F.3d 17, 22 (1st Cir. 2017) (observing that "Rule 9(b)

. . . requires plaintiffs to specifically plead 'the time, place, and content of an alleged false representation'" (citation omitted)).  More precisely, Rule 9(b) requires specifying "(1) the allegedly fraudulent statements; (2) the identity of the speaker; (3) where and when the statements were made; and (4) why the statements were fraudulent."  <u>Ascend Learning, LLC v. Bryan</u>, No. 22-CV-11978-ADB, 2024 WL 3834893, at *3 (D. Mass. Aug. 14, 2024) (Burroughs, J.).

Chagnon alleges broadly that the Defendants falsely represented to him in preemployment interviews that he could make $1,000,000 in commissions in a year, and, based upon these interviews, Chagnon "understood that he could earn unlimited commissions."  Compl. ¶¶ 16-18.  As Chagnon admits, however, he was paid a commission of $500,000 on the GE deal, which is well above the discretionary cap of $250,000 set in the Compensation Plan, which Chagnon signed.  In addition, the Employment Agreement, signed by Chagnon on November 16, 2021, clearly states that Chagnon was "eligible to receive targeted annual commission of $155,000, upon achieving, as determined by Truefort, Inc., revenue goals and objectives as set by Truefort, Inc., in its sole discretion, and subject to the terms and conditions of a commission plan with the Company."  Employment Agreement 1.

Chagnon also seems to claim fraud by omission, by referring to the Defendants' inaction in not disclosing the discretionary cap per deal.  Compl. ¶¶ 26.  Chagnon has not, however, identified any "duty requiring disclosure" that was breached, thus failing to state a claim of fraud by omission.  See McCabe v. Ford Motor Co., 720 F. Supp. 3d 14, 30 (D. Mass. 2024) (Saylor, C.J.).  Indeed, the documents Chagnon signed conspicuously disclosed the caps and discretionary nature of the commissions.  Chagnon's complaint reveals that he was paid the commissions consistent with those documents.  The statements made to him in the preemployment interviews were neither false, nor inconsistent with the documents he later signed.

Accordingly, this Court rules that Chagnon has failed to plead sufficient facts to sustain plausible claims to relief for fraud, misrepresentation and deceit, and therefore the motion to dismiss as to Count V is allowed.

### H.    Estoppel, Quantum Meruit, and Unjust Enrichment Claims (Counts VI, VII and VIII)

Chagnon's equitable claims of estoppel, quantum meruit, and unjust enrichment fail because, as argued by the Defendants, and as mentioned above, see supra section III.B, the Employment Agreement and the Compensation Plan establish a contractual relationship governing Chagnon's compensation which provides an adequate remedy at law.  See generally Compl.; Defs.' Mem. 17-19

(citing Northrup v. Brigham, 63 Mass. App. Ct. 362, 369 (2005)
(estoppel); Scarpaci v. Lowe's Home Ctr., LLC, 212 F. Supp. 3d
246, 253 (D. Mass. 2016) (Saylor, J.) (quantum meruit and unjust
enrichment)).

Accordingly, the Defendants' motion to dismiss Chagnon's
estoppel, quantum meruit, and unjust enrichment claims, Counts
VI, VII, and VIII, is allowed.

### I. The Individual Defendants

As the Defendants point out, "[a] corporate officer has no
liability at common law for the corporation's obligations,"
Williams v. Vanaria, 2000 Mass. App. Div. 162, at *2 (2000), and
in Massachusetts officers "ordinarily [are] not liable for the
corporation's breach of contract," unless the officer induces
the breach out of malice, Union Mut. Life Ins. Co. v. Chrysler
Corp., 793 F.2d 1, 11 (1st Cir. 1986); Def.'s Mem. 19-20.
Chagnon has not pleaded or argued malice, and thus his breach of
contract and implied covenant of good faith and fair dealing
claims must be dismissed as to Malhotra and Schneider.
Therefore, the Motion to Dismiss Counts III and IV is allowed as
to defendants Malhotra and Schneider.

As to Chagnon's Wage Act retaliation claim, "a manager who
'controls, directs, and participates to a substantial degree in
formulating and determining' the financial policy of a business
entity . . . may be subject to liability for violations of the

Wage Act." <u>Cook</u> v. <u>Patient Edu, LLC</u>, 465 Mass. 548, 549 (2013). The Defendants argue that Chagnon's Wage Act claims cannot proceed against Schneider because Chagnon has pleaded no facts suggesting that Schneider had any control over Truefort's financial policy or Chagnon's wages other than his mere title as Chief Revenue Officer.  Defs.' Mem. 20.  This Court agrees. Chagnon pleads that he discussed the specifics of his commission payment with Malhotra, Compl. ¶¶ 48-54, and that Malhotra chose to accelerate his commission payment for tax purposes, <u>id.</u> ¶ 28, but only that he discussed his dissatisfaction over his commission payment with Schneider, apparently after the relevant financial decisions had been made, <u>id.</u> ¶¶ 58-61.  Therefore, the Motion to Dismiss Count II is allowed as to defendant Schneider.

**IV.  CONCLUSION**

This Court rules that the Defendants' Motion to Dismiss, ECF No. 21, is ALLOWED in part as to Counts I, III, V, VI, VII and VIII, each of which are dismissed as set forth above, and DENIED in part as to Counts II, III, and IV, as set forth above. The Motion to Dismiss is also ALLOWED on Counts III and IV as to Malhotra and Schneider, and ALLOWED on Count II as to Schneider.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[3]

---

[3]  This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 47 years.